## S12A1225. JOHNSON v. THE STATE.
### (732 SE2d 266)

HINES, Justice.

Johnny Johnson appeals his convictions for malice murder and possession of a firearm by a first offender probationer, both in connection with the death of Deandre Phillips.[1] For the reasons that follow, we affirm.

---

[1] Phillips was killed between October 2, 2008, and October 4, 2008. On January 11, 2010, a DeKalb County grand jury indicted Johnson for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of the offense of possession of a firearm by a first offender probationer, aggravated assault, and possession of a firearm by a first offender probationer. Johnson was tried before a jury January 11-15, 2010, and found guilty of all charges. On January 26, 2010, he was sentenced to life in prison for malice murder and a consecutive term of five years in prison for possession of a firearm by a first offender probationer. The remaining counts either merged with the malice murder charge or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4), (5) (434 SE2d

Construed to support the verdicts, the evidence showed that in October of 2008, Phillips lived with his roommate, Franklin Bivins, in a guesthouse on the same property as a larger house. The larger, main house on this property was unoccupied, but Phillips had a key to it. The property was easily visible from the nearby home Johnson shared with his wife, Megan Summerous.

On October 2, 2008, Johnson and Summerous were at their home with several other persons who, along with Johnson, were members of a street gang. Phillips was to be "jumped into" this gang at that time; he had briefly been at the Johnson home, but left and did not return. Johnson said that Phillips needed to be "dealt with" because of his absence. Johnson and other gang members left the house; ten minutes later, Summerous heard gunshots. She looked in a closet for a .380 caliber pistol she kept there but did not find it. Minutes later, Johnson returned, and left again shortly thereafter; he did not return until the next evening. Summerous never saw her pistol again.

Bivins had departed the guesthouse at 4:30 p.m. on October 2, 2008; Phillips was still there. Bivins did not have a key to the guesthouse. When he returned the next morning, he knocked on the window but there was no response; he looked inside the guesthouse and saw Phillips's mattress flipped over and Phillips's room "trashed." Bivins called the landlord and then the police; an officer arrived and made a burglary report.

On October 3, 2008, Johnson told his co-worker Solomon that he "had done something crazy" and had killed Phillips, that the killing started as a gang initiation, and that he had shot Phillips in the head in the bathroom of the main house at the property where Phillips lived. On that same day, Johnson asked Solomon to keep a pistol which Johnson said he used in the killing.

On October 8, 2008, Johnson said to another co-worker: "You know my partner? . . . I killed him." He also said that Phillips was supposed to be "jumped into" the gang, but left before that occurred, and that "Zeek had the gun"; "Zeek" was a nickname of Solomon's. Johnson also complained to this co-worker of the smell of Phillips's corpse; the co-worker said that the smell was Johnson's fault, and Johnson began crying.

Between October 3 and October 10, 2008, Bivins noticed a foul smell around the main house. Bivins notified the landlord, who

479) (1993). Johnson filed a motion for new trial on February 23, 2010, and amended it on November 1, 2011; the amended motion was denied on November 14, 2011. Johnson filed a notice of appeal on December 7, 2011. His appeal was docketed in this Court for the April 2012 term, and submitted for decision on the briefs.

visited the property three or four times over the next few days; each time, Johnson appeared shortly after she arrived, having run from his own home. During these visits, the landlord did not enter the main house.

On October 10, 2008, Johnson telephoned 911. He told a responding law enforcement officer that: two strangers, one male and one female, noticed a strange smell coming from the main house at the property where Phillips lived; Johnson and the female entered the house through a broken window; in the bathroom, there was an arm sticking outside the bathtub; he and the female quickly exited; the strangers and Johnson went to Johnson's house and had some drinks; they left to buy some illegal drugs; they took the illegal drugs; and he then called 911.

Phillips's body was in the bathtub. He had been shot seven times, in the head, chest, and arm; five of these wounds would have been potentially fatal, but the condition of Phillips's body prevented the medical examiner from testifying with greater specificity as to which caused death. Law enforcement investigators recovered seven .380 shell casings from the bathtub. Solomon provided the investigators with the pistol that Johnson had given him for safekeeping; it had been bought in 2005 by Megan Summerous and had fired the fatal shots.

1. The evidence authorized the jury to find Johnson guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Johnson contends that the trial court erred when it failed to excuse for cause a certain potential juror. During general voir dire, the prospective juror indicated he would expect a defendant to testify even though the law did not require him to do so. Later, during individual voir dire, the prospective juror said: "If I were accused of murder, I think I would want to testify on my behalf." Defense counsel sought to explain that the law did not require a defendant to testify, and the prospective juror interjected; "I understand the aspects of the law. That's one of the reasons why I'm not a lawyer . . . I respect the law. I have a great deal of respect for the law. I have issue with those types of points." When asked if he "would be able to follow the law" if the court instructed the jury that no inference was to be drawn from the fact that the defendant chose not to testify, the prospective juror responded, "I would do my best." Counsel again asked if he thought that he "would be able to"; the prospective juror again said he would do his best. Finally, counsel asked if he was not sure, the prospective

juror replied that had he been sure on the matter, he "wouldn't have mentioned it."

> Whether to strike a juror for cause lies within the sound discretion of the trial court. Before a juror is excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. Whether or not a prospective juror is qualified must be determined based on a consideration of the voir dire as a whole. An appellate court should not substitute its own finding for that of the trial court, since it must pay deference to the trial court's determination. This deference encompasses the trial court's resolution of any equivocations and conflicts in the prospective juror's responses on voir dire.

*Thorpe v. State*, 285 Ga. 604, 606 (3) (678 SE2d 913) (2009) (citations omitted).

As the trial court noted, the prospective juror testified that he would do his best to follow the law as instructed by the court. When a potential juror testifies that he or she will "try" to decide the case based upon the court's instructions and the evidence, excusing that prospective juror for cause is not mandated. See *Pinckney v. State*, 285 Ga. 458, 460 (3) (678 SE2d 480) (2009); *Peterson v. State*, 282 Ga. 286, 288 (2) (647 SE2d 592) (2007). Nothing in the record shows that the prospective juror had prejudged any issue in the case, and no abuse of discretion is shown in the trial court's refusal to strike the prospective juror for cause. See *Roberts v. State*, 276 Ga. 258, 259-260 (2) (577 SE2d 580) (2003).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 2012.

*David J. Walker*, for appellant.
*Robert D. James, Jr., District Attorney, Daniel J. Quinn, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Dana E. Weinberger, Assistant Attorney General*, for appellee.