S12A1923. ELLIS v. THE STATE.
(736 SE2d 412)

BLACKWELL, Justice.

Darius Ellis was tried by a Fulton County jury and convicted of the murder and attempted armed robbery of Marvel Stripling, as well as possession of a firearm during the commission of a felony. Ellis appeals, contending that the evidence is insufficient to sustain his convictions, that the trial court improperly limited his voir dire of prospective jurors, that the trial court improperly commented on the credibility of a witness, and that he was denied the effective assis-

tance of counsel. Having reviewed the briefs and record, we find no reversible error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Stripling drove to Atlanta on July 21, 2008 to purchase marijuana, bringing with him a large amount of cash. After arriving in Atlanta, Stripling called on his friend, Shaya Muhammad, who had suggested to Stripling that Atlanta was a good market in which to buy marijuana. Muhammad enlisted Ellis, his neighbor, to assist Stripling, and Stripling, Muhammad, and Ellis set out in a car in search of marijuana. Their search eventually took them to a nearby residence, where Ellis entered the home, retrieved a marijuana sample, and eventually brought the sample outside for Stripling to inspect. While Ellis was inside the home, his identical twin brother, Demetrius, appeared at the residence and also entered the home. The sample that Ellis retrieved from the home apparently was acceptable to Stripling, and Stripling, Muhammad, and Ellis returned to the street on which Muhammad and Ellis lived, where the three men waited in their car for a marijuana dealer to arrive.

About 20 minutes later, a man arrived with a garbage bag and went into the home in which Ellis lived. Stripling wanted to remain outside, but Ellis insisted that Stripling complete the marijuana

---

[1] The events that form the basis for the convictions occurred on July 21, 2008. Ellis was indicted on November 25, 2008 and charged with one count of malice murder, three counts of felony murder, and one count each of attempted armed robbery, aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. Ellis was reindicted on February 25, 2011 and charged with the same crimes. Trial commenced on February 28, 2011, and after one count of felony murder was put on the dead docket, the jury returned its verdict on March 2, 2011, finding Ellis guilty on all the remaining counts. Ellis was sentenced to imprisonment for life for felony murder in the commission of an aggravated assault, a consecutive term of imprisonment for 20 years for attempted armed robbery, and a consecutive term of probation for five years for possession of a firearm during the commission of a felony. The trial court correctly did not sentence Ellis on the other felony murder count, see *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and it correctly merged the aggravated assault with the felony murder for which Ellis was sentenced, felony murder in the commission of the aggravated assault. See id. at 372 (5). We note, however, that the trial court should have sentenced Ellis for malice murder, rather than felony murder, so long as the evidence was sufficient to sustain a conviction for malice murder, see *Powell v. State*, 289 Ga. 901, 902 (717 SE2d 215) (2011), and that the trial court should not have merged the possession of a firearm by a convicted felon with felony murder in the commission of aggravated assault in any event. See *Mangrum v. State*, 285 Ga. 676, 683 (11) (681 SE2d 130) (2009). Nevertheless, these sentencing errors do no harm to Ellis, and he understandably does not complain about them on appeal. See *Dunn v. State*, 263 Ga. 343, 345 (2) (434 SE2d 60) (1993). Ellis filed a motion for new trial on March 8, 2011, amended it on October 5, 2011, amended it again on March 6, 2012, and amended it yet again on March 9, 2012. The trial court denied the motion for new trial as amended on March 23, 2012. Ellis timely filed a notice of appeal on April 2, 2012, and the case was docketed in this Court for the September 2012 term and submitted for decision on the briefs.

transaction inside his home. At first, Ellis went into his home alone, but he later returned outside and called for Stripling, and Stripling reluctantly agreed to accompany Ellis into the home. Muhammad followed. Inside, the man who had arrived earlier with a garbage bag pulled out a handgun, and another individual appeared with a bandana over his face, also carrying a gun. Stripling struggled with the gunmen, and in the course of that struggle, he was shot twice in the leg. The massive blood loss occasioned by these gunshot wounds eventually caused his death. Around the time he was shot, some of the money that Stripling had been carrying, as well as some of his jewelry, went missing.

While Stripling was struggling with the gunmen, Muhammad and Ellis fled from the residence. Later, Demetrius and another man were seen exiting and fleeing from the home, both carrying guns. When Ellis met with a detective to discuss the incident, he admitted that he had set up Stripling for an armed robbery. Ellis denied, however, that he knew that anyone would be shot in the course of the robbery, and he added that he was not willing to go to jail for Demetrius.

Ellis contends that the evidence merely shows his presence at the scene of the crimes, which would not be enough, of course, to warrant a conviction. See *Brown v. State*, 291 Ga. 887, 888 (1) (734 SE2d 41) (2012). In support of this contention, Ellis notes that Muhammad testified at trial that Ellis appeared to be shocked by the events that unfolded inside his home and that Ellis fled before any shots were fired. And about his incriminating statements to the detective, Ellis claims that the testimony of the detective about these statements was weak and ambiguous. As we have explained before, however, it is for the jury, not appellate judges, to assess the credibility of witnesses, to weigh the evidence, and to resolve conflicts in the evidence. *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010). When we consider whether the evidence is sufficient to sustain a conviction, we must view the evidence in the light most favorable to the verdict, and we inquire only whether a jury reasonably could find beyond a reasonable doubt from that evidence that the defendant is guilty of the crimes of which he was convicted. *Cutrer v. State*, 287 Ga. 272, 274 (695 SE2d 597) (2010).

The evidence in this case was sufficient to authorize the jury to find that Ellis, Demetrius, and the other gunman were engaged in a common enterprise that involved Ellis luring Stripling into his home for the purpose of an armed robbery. "[W]hether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed." *Teasley v. State*, 288 Ga. 468, 469 (704 SE2d 800) (2011) (citations omitted). See also

*Copeny v. State*, 316 Ga. App. 347, 349 (1) (a) (729 SE2d 487) (2012). Here, the evidence showed that Ellis undertook to guide Stripling in his search for marijuana, that Ellis took Stripling to a residence at which Demetrius appeared, that Ellis and Demetrius were inside the residence for a period of time, that Ellis exited the residence and directed Stripling to return to the street on which Ellis lived, that Ellis waited with Stripling until the gunman with a garbage bag arrived, that Ellis followed the gunman inside his home, that Ellis subsequently called Stripling into his home, and that Ellis insisted that the marijuana transaction be completed inside his home. Moreover, Ellis and Demetrius are brothers, and as we have said before, "where . . . the crimes involve relatives, slight circumstances can support the inference that the parties colluded." *Teasley*, 288 Ga. at 469 (citation and punctuation omitted).

From this evidence, as well as the incriminating statements that the detective attributed to Ellis, the jury properly might have found that Ellis was not merely present at the scene of the crimes, but was a party to them. See *Parks v. State*, 272 Ga. 353, 354 (529 SE2d 127) (2000). Cf. *Moore v. State*, 255 Ga. 519, 521 (1) (340 SE2d 888) (1986) (evidence was insufficient where it was only circumstantial and showed merely that defendant had motive to kill victim, was present at scene of crime, and fled from scene). Even if Ellis "did not have the specific intent that [Stripling] be killed, the crimes which he did intend were dangerous ones; by their attendant circumstances, they created a foreseeable risk of death." *Parks*, 272 Ga. at 354 (citation omitted). Accordingly, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Ellis was a party to the crimes of which he was convicted and for which he was sentenced, namely, felony murder in the commission of an aggravated assault, attempted armed robbery, and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). See also *Teasley*, 288 Ga. at 470; *Hill v. State*, 281 Ga. 795, 797 (1) (a) (642 SE2d 64) (2007); *Parks*, 272 Ga. at 354; *Walsh v. State*, 269 Ga. 427, 430 (1) (499 SE2d 332) (1998).

2. We next consider the contention that the trial court improperly limited the voir dire of prospective jurors. Voir dire began with general questions put to the venire as a whole, and during this portion of the voir dire, Ellis asked whether any jurors had strong feelings about individuals involved in the sale of illegal drugs. Many jurors responded affirmatively to this question, and so, when Ellis was given the opportunity to question the prospective jurors individually, he asked a juror who had indicated that she had such strong feelings whether she could put those feelings aside if "mention of this is

brought up in trial." The prosecuting attorney objected that this question would require the juror to prejudge the case, and the trial court sustained the objection.[2] By doing so, Ellis contends, the trial court improperly limited his examination of the prospective jurors.

As we recently observed, "[a] fair trial before an impartial factfinder is a fundamental component of due process of law," and "voir dire is the engine of selecting a jury that will be fair and impartial." *Ellington v. State*, 292 Ga. 109, 123-124 (7) (b) (735 SE2d 736) (2012) (citations omitted). Consequently, Georgia law provides for voir dire examination that may be relatively broad in scope:

> In the examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the prospective juror.

OCGA § 15-12-133. Nevertheless, the scope of voir dire is not unlimited, and generally speaking, prejudgment questions — questions that require a prospective juror to assume facts that are yet to be proved and to prejudge the case based on those assumed facts — are inappropriate. See *Bryant v. State*, 288 Ga. 876, 880 (4) (a) (708 SE2d 362) (2011) ("Questions . . . that call for prejudgment are improper in a voir dire examination.") (citation omitted). We have acknowledged, however, that "there is often a fine line between asking potential jurors how they would decide the case and questions that merely seek to expose bias or prejudice." *Sallie v. State*, 276 Ga. 506, 510 (3) (578 SE2d 444) (2003). Accordingly, "[t]he scope of voir dire and the propriety of particular questions are left to the sound discretion of the trial court." *Howard v. State*, 286 Ga. 222, 229 (5) (686 SE2d 764)

---

[2] The State contends that Ellis acquiesced in this ruling by failing to object to it. But "once the trial court has addressed a party's motion or objection and has issued a ruling, the party adversely affected need not then further object or 'except' to the trial court's ruling in order to preserve the issue for appeal." *Ellis v. State*, 287 Ga. 170, 172 (2) (695 SE2d 35) (2010) (citation and punctuation omitted). See also *Humphreys v. State*, 287 Ga. 63, 69 (4) (694 SE2d 316) (2010); *Cowan v. State*, 156 Ga. App. 650, 651 (275 SE2d 665) (1980), overruled on other grounds, *Legare v. State*, 256 Ga. 302, 304 (1), n. 2 (348 SE2d 881) (1986). Ellis has adequately preserved his voir dire issue for our review.

(2009) (citation omitted). We need not decide in this case, however, whether the trial court abused its discretion when it sustained the objection about which Ellis complains.

Even assuming that Ellis was entitled to ask the prospective jurors whether they could put aside strong feelings about sellers of illegal drugs if "mention of this is brought up in trial," we conclude that any error in sustaining an objection to that question was harmless. See *Cherry v. State*, 230 Ga. App. 443, 444 (1) (496 SE2d 764) (1998). This is not a case in which the trial court foreclosed all inquiry concerning the subject matter to which the question was directed. Cf. *Ellington*, 292 Ga. at 132 (7) (d) (trial court foreclosed "any inquiry into whether jurors might be biased in a case involving child victims" (emphasis omitted)). To the contrary, Ellis was permitted to question the venire as a whole to identify prospective jurors who had strong feelings about individuals involved in the sale of illegal drugs, and even after the trial court sustained the objection at issue here, Ellis was permitted to rephrase his inquiry and to ask a prospective juror individually whether she could make a decision based on the law and evidence, "no matter what your feelings are for or against anything else that might be mentioned." See *Chancey v. State*, 256 Ga. 415, 424 (3) (a) (349 SE2d 717) (1986); *Walker v. State*, 214 Ga. App. 777, 779 (3) (449 SE2d 322) (1994). Consequently, any error in sustaining the objection at issue was harmless, and we find no reversible error in the way that the trial court limited the voir dire examination of the prospective jurors. See *Chancey*, 256 Ga. at 424 (3) (a).

3. We turn now to the claim that the trial court improperly commented on the credibility of a witness in the presence of the jury. As we noted earlier, a detective testified at trial that Ellis admitted that he set up Stripling for an armed robbery. On cross-examination, Ellis asked the detective about his testimony at a pretrial hearing, specifically about his failure to testify at that hearing about Ellis having set up an armed robbery. In response, the prosecuting attorney sought to admit a document as a prior consistent statement by the detective. Ellis objected, and during the colloquy that followed, the trial judge said, "I think it is admissible as a prior consistent." Ellis contends that this statement was an improper comment on the evidence.

According to OCGA § 17-8-57, "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to

express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[3] We have explained before, however, that this rule

> does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence. Furthermore, we have previously determined that remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence.

*Butler v. State*, 290 Ga. 412, 416 (4) (721 SE2d 876) (2012) (citations and punctuation omitted). See also *Boyd v. State*, 286 Ga. 166, 168 (3) (686 SE2d 109) (2009). In this case, the statement at issue was made by the trial judge in the context of a colloquy concerning an evidentiary objection and the ruling of the court on that objection. Accordingly, the statement did not amount to an expression of an opinion of the proof or the guilt of the accused. See *Brown v. State*, 242 Ga. App. 347, 348-349 (2) (529 SE2d 650) (2000) (where trial judge commented "in the presence of the jury that [a witness] had made a prior consistent statement," and the "comment was made in the context of a ruling on Brown's objection to the introduction of the [witness's] earlier statement to investigators," OCGA § 17-8-57 was not violated).[4] Moreover, the trial court cautioned the jury explicitly at the close of the trial that "[b]y no ruling or comment that the Court has made during the progress of this case has the Court intended to express any opinion upon the facts of the case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant." See id. at 349 (2); see also *Butler*, 290 Ga. at 416 (4); *Creed v. State*, 255 Ga. App. 425, 428 (1) (565 SE2d 480) (2002). In these circumstances, we see no violation of OCGA § 17-8-57.

4. Last, we turn to the contention that Ellis was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Ellis must prove both that the performance of his lawyers was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To show that the performance of his

---

[3] Ellis did not object at trial that the statement of the trial judge was an improper comment on the evidence, but his failure to object is inconsequential because "[a] violation of OCGA § 17-8-57 is always 'plain error' and failure to object will not preclude appellate review." *Murphy v. State*, 290 Ga. 459, 461 (2) (722 SE2d 51) (2012) (citation omitted).

[4] To the extent that *Brown*, 242 Ga. App. at 349 (2), relied on the absence of any objection or motion for mistrial in response to the allegedly improper comment as a basis for its conclusion that no reversible error occurred, it is disapproved. *Ledford v. State*, 289 Ga. 70, 84-85 (14) (709 SE2d 239) (2011); *Murphy*, 290 Ga. at 461 (2).

lawyers was deficient, Ellis must prove that they performed their duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to show that he was prejudiced by the performance of his lawyers, Ellis must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, though not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). We conclude that Ellis has failed to carry his burden.

(a) Ellis claims that his trial lawyers were ineffective because they failed to object to the limitation of voir dire discussed in Division 2 above. But as we already have concluded, Ellis nevertheless was able to adequately explore any inclination or bias that might have derived from strong feelings that prospective jurors had about individuals involved in the sale of illegal drugs. See Division 2, supra. Moreover, Ellis failed to present any evidence at the hearing on his motion for new trial to show that the disallowed voir dire question would have made it "apparent that [any juror] had a fixed and definite opinion regarding the issue of guilt or could not decide the case based on the evidence and instructions, and that the trial court would have abused its discretion by failing to strike them for cause." *Cade v. State*, 289 Ga. 805, 809 (4) (716 SE2d 196) (2011). For these reasons, Ellis has failed to show that the failure of his lawyers to challenge the limitation of voir dire occasioned by the trial court sustaining a single objection to a specific question caused him any prejudice.

(b) Ellis asserts that his lawyers were ineffective because they failed to move to strike three prospective jurors for cause, all of whom had said that they had strong feelings about individuals involved in the sale of illegal drugs. When asked about her ability to decide the case based on the evidence and charge of the court, the first of these jurors initially answered "[p]ossibly," and when questioned further by the trial judge, she said that she "would try."[5] In response to similar questions, the second of these jurors said that "I hope I can," and she indicated that she did not think that she would be unable to follow the

---

[5] Although Ellis criticizes the questions posed by the trial judge, the transcript shows that they were "objective and calculated to clarify the prospective juror's views." *Howard*, 286 Ga. at 229 (5).

law. The third of these jurors answered "probably so" and "I would think so." As we understand it, Ellis complains that none of these responses were unequivocal and that adequate grounds existed, therefore, to challenge the jurors for cause.

But "[a] prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause." *Cade*, 289 Ga. at 807 (3) (citations omitted). For instance, "[w]hen a potential juror testifies that he or she will 'try' to decide the case based upon the court's instructions and the evidence, excusing that prospective juror for cause is not mandated." *Johnson v. State*, 291 Ga. 621, 624 (2) (732 SE2d 266) (2012) (citations omitted). See also *Griffiths v. State*, 283 Ga. App. 176, 180 (2) (641 SE2d 169) (2006) (court not required to strike juror who held certain ingrained opinions about drug dealing); *Brown v. State*, 243 Ga. App. 632, 632-633 (1) (534 SE2d 98) (2000) (court not required to strike juror who expressed strong feelings about illegal drugs and illegal drug use). Furthermore, the transcript of voir dire does not reveal that any of the three prospective jurors at issue had a fixed and definite opinion as to the question of guilt or innocence. *Cade*, 289 Ga. at 808 (4). And "a decision on juror bias lies within the sound discretion of the trial court and is based on the court's evaluation of a potential juror's demeanor and credibility." *Hardnett v. State*, 285 Ga. 470, 475 (7) (678 SE2d 323) (2009). For these reasons, Ellis has failed to show that a motion to strike any of these prospective jurors for cause likely would have been successful, and he has, therefore, failed to show that his lawyers performed deficiently when they failed to move to strike or that he was prejudiced as a result.[6] See id.; *Cade*, 289 Ga. at 808 (4).

(c) Ellis claims that his lawyers were ineffective because they failed to move to strike for cause another prospective juror. Ellis notes that this prospective juror previously had been employed as an FBI agent, assigned for nine years to a bank robbery squad, and that he was the victim in a pending armed robbery prosecution for which the district attorney prosecuting Ellis was responsible. A prospective juror must be excused for cause if he is employed as "a full-time police officer with arrest powers." *Robinson v. State*, 278 Ga. 836, 838 (4) (607 SE2d 559) (2005) (footnote omitted). That rule does not require a trial court, however, to strike for cause a former law enforcement officer, such as the prospective juror at issue here, who had left the

---

[6] To the extent that Ellis complains that his lawyers failed to adequately explore in voir dire the strong feelings of these prospective jurors about individuals involved in the sale of illegal drugs, Ellis cannot show prejudice in that respect because he has failed to come forward with any evidence of the answers that further questioning in voir dire would have elicited. *Cade*, 289 Ga. at 809 (4).

employ of the FBI about 30 years before the trial of this case. *Rickman v. State*, 277 Ga. 277, 280 (3) (587 SE2d 596) (2003). This prospective juror said that he could still be a fair and impartial juror, notwithstanding his law enforcement background, and that background, therefore, afforded no basis to move to excuse him for cause.

About the pending armed robbery prosecution, there is no evidence that the prospective juror had any contacts concerning that prosecution with any person employed by the district attorney. And "[w]e have been reluctant to extend the automatic disqualification rules for jurors beyond the statutorily prohibited relationships and, in criminal cases, full-time law enforcement officers and employees of the prosecutor's office." *Moore v. Moore*, 281 Ga. 81, 84 (4) (635 SE2d 107) (2006) (citations omitted) (citing a case in which a prospective juror represented by law firm of the solicitor-general was not automatically disqualified). As for the juror's experience as a victim of an armed robbery, he never indicated in voir dire that this experience would make it difficult for him to be fair and impartial, and nothing in the transcript shows that he had a fixed and definite opinion about guilt or that he could not decide the case based on the evidence and charge. See *Garrett v. State*, 280 Ga. 30, 31 (2) (622 SE2d 323) (2005). See also *Pearce v. State*, 300 Ga. App. 777, 780-781 (2) (686 SE2d 392) (2009) (victim of child molestation not disqualified from service as juror in case involving child molestation). In these circumstances, we cannot say that a motion to strike this prospective juror likely would have been successful, and for that reason, Ellis has failed to show that his lawyers performed deficiently when they failed to make such a motion or that Ellis was prejudiced as a result. See *Cade*, 289 Ga. at 808 (4); *Hardnett*, 285 Ga. at 475 (7); *Rickman*, 277 Ga. at 280 (3).

(d) Ellis contends that his lawyers were ineffective because they failed to move to strike for cause yet another prospective juror, one who admitted to a "little" bias based on his opinion that defendants are "[g]enerally" guilty, and who said that, although "every case is individual, . . . you get that in your head." But "a prospective juror's expression of such a belief does not necessarily require disqualification from service." *Bishop v. State*, 268 Ga. 286, 289 (5) (486 SE2d 887) (1997). See also *Wilson v. State*, 271 Ga. 811, 815 (5) (a) (525 SE2d 339) (1999) (court was not obligated to strike a juror who initially expressed belief that 99.9 percent of criminal defendants are guilty), overruled on other grounds, *O'Kelley v. State*, 284 Ga. 758, 768 (3) (670 SE2d 388) (2008); *Roberts v. State*, 276 Ga. 258, 259 (2) (577 SE2d 580) (2003). The juror here acknowledged that every case is unique, and in response to additional questioning, he said that he was impartial as to this case and would do his best to base his decision on the evidence and on the court's instructions and to hold the State to its burden. On

a motion to strike for cause, the trial court would not have been compelled to rely on the juror's "initial expression of a potentially disqualifying belief, rather than [his] subsequent qualifying answers." *Bishop*, 268 Ga. at 289 (5). See also *Wilson*, 271 Ga. at 815 (5) (a). Yet again, therefore, Ellis has not shown that an effort to strike this prospective juror would have been successful, and he has failed to carry his burden under *Strickland* to prove deficient performance that caused actual prejudice.[7] See *Cade*, 289 Ga. at 808 (4); *Hardnett*, 285 Ga. at 475 (7).

(e) Finally, Ellis claims that his lawyers were ineffective because they failed to object when the prosecuting attorney referred in the presence of the jury to his pretrial motion to suppress his alleged inculpatory statements. The prosecuting attorney elicited testimony from a detective that the detective previously had testified under oath in this case on November 19, 2009. On cross-examination, Ellis asked the detective several times about his prior testimony, using the transcript of the motion hearing on that date. On redirect, the prosecutor asked whether the earlier hearing involved a motion to suppress statements made by Ellis, and the detective answered in the affirmative. Citing *Chumley v. State*, 282 Ga. 855, 857-858 (2) (655 SE2d 813) (2008), Ellis now argues that this testimony erroneously signaled to the jury that the trial court had approved the admission of the statements as voluntary.

Ellis did not raise this claim, however, before or during the hearing on his motion for new trial, and, although one of his lawyers testified at that hearing, Ellis did not question her with respect to this issue. As to deficient performance, the first element of ineffective assistance, the United States Supreme Court has explained that we

> must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presump-

---

[7] Ellis also complains that his lawyers failed to object to the rehabilitative questions put to this prospective juror as repetitive and improper, but the trial court only asked two such questions, the prosecutor asked one, and our review of the voir dire transcript shows that the court did not engage in improper rehabilitation in order to reject clear evidence of the juror's bias, nor did the court otherwise abuse its discretion in the manner in which voir dire was conducted. *Griffin v. State*, 282 Ga. 215, 220-221 (3) (647 SE2d 36) (2007), overruled on other grounds, *Garza v. State*, 284 Ga. 696, 697, 702 (1) (670 SE2d 73) (2008), abrogated, in turn, by statute as noted in *Williams v. State*, 291 Ga. 501, 503 (1) (b), n. 2 (732 SE2d 47) (2012); *Chandler v. State*, 281 Ga. 712, 715 (2) (642 SE2d 646) (2007); *Ros v. State*, 279 Ga. 604, 606 (4) (619 SE2d 644) (2005). It is well settled that the failure to make a meritless objection does not amount to ineffective assistance. *Scott v. State*, 290 Ga. 883, 889 (7) (a) (725 SE2d 305) (2012).

tion that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U. S. at 689 (III) (A) (citation and punctuation omitted). And where, as here, "trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome this presumption." *Higginbotham v. State*, 287 Ga. 187, 190-191 (5) (a) (695 SE2d 210) (2010) (citation and punctuation omitted). During the cross-examination of the detective at trial, Ellis's lawyer specifically relied on the motion hearing transcript, and the prosecutor did not refer to the ruling of the trial court on the motion to suppress, nor did he indicate that the court had found that Ellis made the statements voluntarily. A reasonable lawyer might have concluded that an objection would be unlikely to succeed and would only serve to draw attention to the reference to the motion to suppress. After reviewing the trial transcript, we conclude that "[c]ounsel's choice not to object may have been a strategic decision, and because [Ellis] did not question trial counsel concerning this decision, [he] has failed to carry [his] burden to demonstrate that trial counsel provided deficient performance." *Smith v. State*, 288 Ga. 348, 352-353 (8) (d) (703 SE2d 629) (2010) (citation and punctuation omitted).

Moreover, *Chumley* is distinguishable because it involved an explicit statement by the trial judge to the jury that the defendant " 'clearly understood and knew' he was waiving his constitutional rights and that he had given his statement 'freely and willingly.' " *Chumley*, 282 Ga. at 858 (2). In this case, the trial court made no expression of such an opinion, and the prosecutor did not refer to either the fact or substance of the ruling of the court on the motion to suppress. See *Boyd*, 286 Ga. at 168 (3); *Medlock v. State*, 263 Ga. 246, 250 (4) (430 SE2d 754) (1993). Accordingly, Ellis has failed to show any reasonable probability that the outcome of the trial would have been different if his lawyers had objected to the reference to the motion to suppress, as the reference did not amount to reversible error. See *Medlock*, 263 Ga. at 250 (4).

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 7, 2013.

*William G. Cromwell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Sheila E. Gallow, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General*, for appellee.