## S07A1280. CHUMLEY v. THE STATE.
### (655 SE2d 813)

CARLEY, Justice.

A jury found Tom Chumley guilty of malice murder of his mother and possession of a firearm during commission of that crime. The trial court entered judgments of conviction on the guilty verdicts and sentenced Chumley to life imprisonment for the murder and to a consecutive five-year term for the weapons offense. Following the denial of a motion for new trial, he appeals.[*]

1. The victim, Meredith Guy, was in poor health, but lived alone. Her daughter, Martha Mantlow, lived some distance away and called her every Friday. When Ms. Mantlow phoned one Friday and there was no answer, her husband contacted his cousin and asked him to go to Ms. Guy's home to investigate. He did, and found the door open and the victim's body in the hallway. She had been shot twice, once in the head and once in the back.

More than a year after the murder, Chumley called 911 and stated that he wanted to be arrested for the crime. A few weeks later, he presented himself at jail where he asked to turn himself in for the murder. He was not placed under arrest or restrained and, after being

---

[*] The crimes were committed February 28, 2003. The grand jury indicted Chumley on April 15, 2004. The jury returned the guilty verdicts on March 12, 2005. Chumley filed a premature motion for new trial on April 1, 2005, because the trial court did not enter the judgments of conviction and impose the sentences until April 5, 2005. The trial court denied the motion for new trial on November 7, 2006. Chumley filed a notice of appeal on November 16, 2006. The case was docketed in this Court on May 4, 2007, and the appeal was submitted for decision on the briefs.

advised of his constitutional rights and signing a waiver, he made an inculpatory statement which was videotaped. Thereafter, Chumley was arrested. The following day, he executed another waiver and made a second statement which was also videotaped.

The videotapes of the two statements were played for the jury. When Chumley testified in his own defense, however, he denied killing his mother. Recanting both of his statements, he claimed that he made them only because of his severe depression. A psychiatrist testified that, in his expert opinion, Chumley suffered from bipolar depression and post traumatic stress disorder, but that he was sane, was not experiencing delusional compulsions and knew right from wrong.

Construing this evidence most strongly in support of the verdicts, it was sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that Chumley was guilty of malice murder and possession of a firearm during the commission of that crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to the introduction of the videotapes of Chumley's inculpatory statements, the trial court, in the presence of the jury, asked the prosecutor and defense counsel to confirm that they had "stipulated that this statement was made knowingly and that [Chumley] knew what he was doing when he made this statement. And . . . that it was made voluntarily; in other words, it was clearly voluntary, he gave it freely and willingly." Chumley's attorney responded: "[W]e say he gave it freely and voluntarily. We — we never did say he knew what he was doing. But he did give it voluntarily and freely, no question about that." At that point, the jury was asked to step out, and a long colloquy between the trial court and both lawyers ensued. During that discussion, defense counsel repeatedly stated that, although he was conceding the admissibility of the statement since it was made voluntarily and freely, he was challenging the veracity of the statement on the ground that it was a result of his client's extreme depression. Defense counsel stated as follows: "I think we can explain this confession to the jury and why he made this confession, why he made a false confession . . . ." The trial court eventually stated that "we probably need to treat this as a normal *Jackson [v.] Denno* hearing . . . ." After some additional discussion, the trial court indicated that it was "going to rule that this [statement] was voluntarily given, it was knowingly — his rights were knowingly and intelligently waived, and consequently it's admissible . . . . And I'm going to tell the jury that." When the jurors returned to the courtroom, the trial court instructed them that they

should understand that the Court has ruled that [Chumley] clearly understood and knew that he was giving up the

rights that were reflected in this one exhibit commonly known as his *Miranda* rights, and further that his statement was clearly voluntary, it was freely and — in other words it was freely and willingly given.

Chumley urges that, by giving this instruction to the jury, the trial court expressed an opinion as to what had been proven and thereby violated OCGA § 17-8-57.

Determining the voluntariness and, consequently, the admissibility of a defendant's statement in a criminal case is a two-step process. Initially, the trial court addresses the issue outside the presence of the jury and, if the statement is determined to be voluntary, it is admitted for the jury to make the ultimate determination as to its voluntariness and, thus, its probity as inculpatory evidence. See *Pierce v. State*, 238 Ga. 126, 128 (1) (231 SE2d 744) (1977); *Farley v. State*, 145 Ga. App. 98, 100 (1) (243 SE2d 322) (1978). Having made the determination that a statement is voluntary, the trial court should simply admit it into evidence and not inform the jury of its ruling.

[A] trial court's ruling before the jury on the voluntariness of a defendant's statement, even when coupled with an explanation as to the roles played by the trial court and the jury when the voluntariness of a defendant's statement is questioned, amount[s] to a violation of OCGA § 17-8-57. [Cits.]

*Ray v. State*, 181 Ga. App. 42, 44 (3) (351 SE2d 490) (1986). "It is error to violate even the spirit of this section. [Cits.] Consequently, a violation is a mandatory cause for a new trial. [Cits.]" *Dean v. State*, 168 Ga. App. 172, 175 (3) (308 SE2d 434) (1983).

The State urges that there was no error here, since Chumley did not contest that he made the statement freely and voluntarily, at least in the sense that he conceded that it was not the product of any coercion on the part of the officers. However, Chumley's concession as to the voluntariness of his statement is immaterial, since the error lies in the trial court's informing the jury that it had ruled that he made it voluntarily. "The reason for [OCGA § 17-8-57] prohibiting the judge from intimating his opinion as to what has been proved is to keep the jury from being influenced . . . . [Cits.]" *Morton v. State*, 132 Ga. App. 329, 330 (1) (208 SE2d 134) (1974). Regardless of any agreement between the attorneys as to the admissibility of Chumley's statement, the truthfulness of that statement was being contested. The jurors first heard the trial court express its belief that there was a stipulation that Chumley "knew what he was doing when he made this statement" and then, after being sent out and called

back to the courtroom, they were informed of the trial court's conclusion that Chumley "clearly understood and knew" he was waiving his constitutional rights and that he had given his statement "freely and willingly." Any reasonable juror, having heard the trial court's comments, might well construe them as an expression of opinion on the credibility of the admissions contained in the statements. The members of the jury "heard [the trial court's] words, and no man could dare say they were not thereby influenced to some extent, at least." *Alexander v. State*, 114 Ga. 266, 268 (2) (40 SE 231) (1901). "Jurors, like other human beings, are unconsciously too much affected by strong mental impressions for these impressions to be nicely segregated from the mass of evidence . . . ." *Campbell v. State*, 155 Ga. 127, 132 (116 SE 807) (1923) (Russell, C. J., concurring specially). Thus, the trial court certainly violated the spirit, if not the letter, of OCGA § 17-8-57 by making the gratuitous comment regarding its ruling on the admissibility of Chumley's statement.

The fact that Chumley did not object is immaterial, since a violation of OCGA § 17-8-57 is "plain error." *Paul v. State*, 272 Ga. 845, 848 (3) (537 SE2d 58) (2000). The "plain error" rule does not establish a different standard for determining the reversibility of an error, but instead allows a criminal defendant to avoid the penalty of waiver, by "permit[ting] appellate review of assertions of error raised for the first time on appeal where the asserted error affects substantive rights. [Cit.]" *Brooks v. State*, 281 Ga. 514, 516 (2) (640 SE2d 280) (2007). The trial court's comment was not only plain error, it is not subject to the harmless error principle. *Patel v. State*, 282 Ga. 412, 415 (2) (651 SE2d 55) (2007).

> "[I]t is the duty of this [C]ourt to grant a new trial when such error is committed, whether, in [its] opinion, substantial justice has or has not been done by the verdict." [Cit.] . . . . [S]uch an error "renders the grant of a new trial imperative, without reference to the correctness of the verdict."

*Golden v. State*, 45 Ga. App. 501, 504 (2) (165 SE 299) (1932). "It is well established that [the trial court's compliance with the] statutory language [of OCGA § 17-8-57] is mandatory and that a violation of [its mandate] requires a new trial. [Cits.]" *Patel v. State*, supra at 414 (2). "In light of the mandatory nature of the statute and the case law interpreting the statute, we must reverse [Chumley's] conviction and remand the case to the trial court for a new trial." *Ray v. State*, supra. See also *Dean v. State*, supra.

3. During the trial, Chumley's feet were shackled despite his attorney's request that the restraints be removed. The failure of the trial court to order removal of the shackles is enumerated as error.

Since the case must be retried as the result of the violation of OCGA § 17-8-57 discussed in Division 2, we need not determine whether the trial court also erred by requiring Chumley to sit at the defense table while wearing shackles on his feet. Should the issue arise at retrial, the trial court is reminded of the long-standing rule in this state that a defendant has the right to be tried in an atmosphere free of visible restraint except in special circumstances which, in the trial court's exercise of its sound discretion, dictate otherwise. See *Allen v. State*, 235 Ga. 709, 711-712 (221 SE2d 405) (1975). See also *Deck v. Missouri*, 544 U. S. 622 (125 SC 2007, 161 LE2d 953) (2005) (extending this rule to the sentencing phase of a capital case).

4. The remaining enumerations of error all relate to instances of asserted ineffectiveness on the part of trial counsel. There is no need to address those contentions, as they are unlikely to recur at the new trial that is mandated by reason of the trial court's clear error in violating OCGA § 17-8-57.

*Judgment reversed. All the Justices concur, except Sears, C. J., who concurs in Divisions 1 and 3 and in the judgment.*

DECIDED JANUARY 8, 2008.

*J. Pete Theodocion*, for appellant.

*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.

