## A11A0329. PRICE v. THE STATE.

### (712 SE2d 135)

DOYLE, Judge.

Following a jury trial, Kaycee Price was convicted of three counts of obtaining a controlled substance by fraudulent means[1] and seven counts of forgery.[2] Price appeals, arguing that the trial court erred by: (1) denying her motion for mistrial based on improper comments by the trial court regarding the credibility of a witness; (2) overruling her objection to the prosecutor's closing arguments; and (3) imposing an improper sentence. We reverse Price's conviction and remand the case for a new trial, for reasons that follow.

Viewed in favor of the verdict,[3] the record shows that Price was hired as a data entry clerk for Dr. Herman Levy's medical practice in 2000; she eventually became the office manager. Price called a pharmacy and ordered multiple refills of a hydrocodone prescription for herself. Dr. Levy testified that he did not authorize Price to call in the prescription refills, explaining that "[he] would not authorize anyone to call in a narcotic prescription for themselves. No way, no how, nothing. . . . That's my standard operating procedure."[4] Price also stamped Dr. Levy's signature on multiple refill prescriptions for Adderall (an amphetamine) for her husband, Derek Cody. According to Dr. Levy, he prescribed Adderall for Cody in May 2007, but he did not authorize Price to stamp his name to any of Cody's Adderall prescription refills.[5]

At the conclusion of the trial, the jury found Price guilty of three counts of obtaining hydrocodone by fraudulent means (Counts 2, 3, and 4) and seven counts of forgery (Counts 13-19) with regard to the Adderall prescription.[6] This appeal follows.

1. Price argues that the trial court erred by denying her motion for mistrial after the court's "improper attack on the credibility of a defense witness." We agree that the trial court's actions require reversal.

Holly Durden, Price's friend and a former clerical employee of Dr. Levy, testified during the State's case-in-chief. Durden stated

---

[1] OCGA §§ 16-13-43 (a) (3); 16-13-26 (1) (A) (ix).

[2] OCGA § 16-9-1 (a).

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[4] Price testified that she ordered the refills for her hydrocodone prescription at Dr. Levy's direction and with his authorization, and she stated that he was usually in her office when she made the calls to the pharmacy.

[5] Price testified that Dr. Levy ordered the Adderall refills and that she stamped his name with his direct authorization because he was out of the office.

[6] The State also charged Price with an additional nine counts of obtaining a controlled substance by fraudulent means, alleging that she called in additional refills of hydrocodone for herself, but the jury found her not guilty of those nine counts (Counts 1, 5-12).

that Dr. Levy treated her and provided her with a prescription for medication while she worked for him, but he never permitted her to call in prescriptions or refills to the pharmacy. After Dr. Levy and his wife, Joni Levy (the office administrator at Dr. Levy's practice), testified for the State,[7] Price called Durden as a defense witness. Durden stated that several months before the trial, she was not feeling well and called Mrs. Levy's cell phone to try and get in touch with Dr. Levy. Durden testified that during the call, Mrs. Levy stated that "they've scratched my back before, that now I need to scratch their back, and I didn't go any further with that"; according to Durden, Mrs. Levy was talking about the criminal case against Price. Durden then went on to testify that Price had a good reputation and that she would believe Price under oath. Thereafter, the trial court interrupted the State's brief cross-examination of the witness and engaged in the following colloquy with Durden:

THE COURT: Are you lying under oath up here?
THE WITNESS: No, ma'am.
THE COURT: Would you lie under oath for —
THE WITNESS: No, ma'am.
THE COURT: — for Dr. Levy and his wife —
THE WITNESS: No, ma'am.
THE COURT: — or his firm?
THE WITNESS: No, ma'am.
THE COURT: Everything you've said has been truthful?
THE WITNESS: Yes, ma'am.

Price immediately moved for a mistrial outside the presence of the jury, arguing that the trial court "made a comment upon the testimony of Holly Durden indicating that the [c]ourt believes that she was not telling the truth." In response, the trial court stated:

That's not . . . what this [c]ourt did. You asked her to say about you scratch my back or something and what I wanted to know, was she lying under oath up here or is everything she told this [c]ourt truthful. I wanted to hear her tell me it was truthful. That's exactly what she said. Your motion is denied. It was meant to determine whether or not she got up here — the innuendo is that she would get up here and lie. What this [c]ourt wanted to know is whether or not she

---

[7] Mrs. Levy testified that Price "walked off the job" after Mrs. Levy spoke to her about her job performance. Thereafter, Mrs. Levy was present when the pharmacy called the office to confirm Price's hydrocodone refill, and Mrs. Levy spoke to the police during the subsequent criminal investigation.

did. She convinced this [c]ourt that she did not. And if you misread what the [c]ourt did, I'm sorry you misread it, but your motion is denied.

On appeal, Price argues that the trial court's questioning of Durden violated OCGA § 17-8-57, which provides as follows:

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

"The purpose of this limitation at least in part is to prevent the jury from being influenced by any disclosure of the judge's opinion regarding a witness's credibility."[8] Certainly, "[i]t is a court's right, and oftentimes its duty, to question a witness in order to develop fully the truth of a case. However, that right should be exercised sparingly . . ."[9] and only if the trial court "does not violate the statutory prohibition set forth in OCGA § 17-8-57 against expressions or intimation of opinion as to what has or has not been proved as to the guilt of the accused."[10] It is axiomatic that "[t]he credibility of a witness is a material fact in every case, and any questions of credibility are for the jury to decide. Therefore, anything which tends to uphold, to support, to disparage, or to lower the character and the resulting credibility of the witness is vitally connected with the facts of the case."[11] In this case, the trial court's questions to the witness — consisting merely of asking the witness whether she was lying or being truthful — clearly intimated the court's opinion regarding the credibility of her testimony and were therefore patently improper.

Any reasonable juror, having heard the trial court's comments, might well construe them as an expression of

---

[8] *Craft v. State*, 274 Ga. App. 410, 411 (1) (618 SE2d 104) (2005).

[9] (Punctuation and footnote omitted.) *Milner v. State*, 270 Ga. App. 80, 83 (1) (606 SE2d 91) (2004).

[10] *Walker v. State*, 267 Ga. App. 155, 158 (2) (598 SE2d 875) (2004).

[11] (Punctuation and footnotes omitted.) *Callaham v. State*, 305 Ga. App. 626, 627 (1) (700 SE2d 624) (2010).

opinion on the credibility of the [witness]. The members of the jury heard the trial court's words,[12] and no man could dare say that they were not thereby influenced to some extent, at least. Jurors, like other human beings, are unconsciously too much affected by strong mental impressions for these impressions to be nicely segregated from the mass of evidence.[13]

Here, it was undisputed that Price called in the hydrocodone refill prescriptions and stamped Dr. Levy's name to her husband's Adderall refills. The sole issue, therefore, was whether she did so with the express authority and at the direction of Dr. Levy. Resolution of this issue depends wholly on the *jury's* determination of the credibility of the witnesses. Although the trial court explained that she asked the questions of Durden because the court "wanted to know [if] she [was] lying under oath . . . [or if] everything she told [the c]ourt [was] truthful," the judge's credibility determinations regarding the witnesses were irrelevant. The trial court's questions improperly usurped the role of both the jury and the prosecution.

" 'In light of the mandatory nature of the statute and the case law interpreting the statute, we must reverse [Price's] conviction[ ] and remand the case to the trial court for a new trial' "[14] as to the ten counts for which she was convicted. Because Price was adjudged not guilty of Counts 1 and 5-12, however, the State cannot retry her for those counts.[15]

2. In light of our holding in Division 1, we need not address Price's remaining enumerations of error.

*Judgment reversed and case remanded. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JUNE 17, 2011.

*Zipperer, Lorberbaum & Beauvais, Alex L. Zipperer, Eric R. Gotwalt*, for appellant.

---

[12] Compare *Davenport v. State*, 308 Ga. App. 140, 157 (3) (706 SE2d 757) (2011) (trial court's comments regarding the evidence were made outside the presence of the jury); *Morales v. State*, 286 Ga. App. 698, 701 (2) (649 SE2d 873) (2007) (same).

[13] (Citation and punctuation omitted.) *Chumley v. State*, 282 Ga. 855, 858 (2) (655 SE2d 813) (2008).

[14] *Callaham*, 305 Ga. App. at 628 (1). See OCGA § 17-8-57.

[15] See *Brown v. Ohio*, 432 U. S. 161, 165 (97 SC 2221, 53 LE2d 187) (1977); *Terrell v. State*, 276 Ga. 34, 38-39 (4) (a) (572 SE2d 595) (2002).

*Jacquelyn L. Johnson, District Attorney, Jonathan R. Miller III, Assistant District Attorney*, for appellee.