**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 17, 2014**

# In the Court of Appeals of Georgia

A14A1228. WILLIAMS v. THE STATE.                    DO-045 C

DOYLE, Presiding Judge.

Anthony Joe Williams was convicted of first degree arson,[1] first degree burglary,[2] and first degree criminal damage to property.[3] Following the trial court's denial of his amended motion for new trial, Williams filed this appeal, challenging the sufficiency of the evidence and alleging various instances of ineffective assistance of counsel. For the reasons that follow, we reverse.

> On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence

---

[1] OCGA § 16-7-60 (a) (3).

[2] OCGA § 16-7-1 (b)

[3] OCGA § 16-7-22 (a) (1).

is sufficient under the standard of *Jackson v. Virginia*.[4] This same standard applies to our review of the trial court's denial of [Willams's] motion for new trial. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

So viewed, the evidence shows that at approximately 2:40 a.m. on September 29, 2011, the local fire department responded to a call that a church building was on fire near the rear of the building. A liquified petroleum gas system was located in the church, and gas lines were located in the back area. After the fire was under control at about 10:00 a.m., Keith Wright, whose company supplied propane to the church, examined the gas lines and discovered they were cut in a manner which left jagged edges on the pipes and was inconsistent with a professional cut. Wright explained that one end of the pipe showed that it was closest to the fire because of its distorted appearance; he stated that when the line was cut it would have made a hissing noise and emitted a foul, distinctive odor.

---

[4] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[5] (Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

The State presented testimony from Frank Nasworthy of the local fire department and Alan Logue of the State Fire Marshall's Office, who both concluded, based on their investigation, that the fire was intentionally set. A tool bag was found in the debris that the church pastor testified was not normally found in that location, and a portion of cut copper tubing from the propane tank was also discovered in the debris.

Video surveillance from two nearby businesses was presented, and the contents of the tapes were testified to by Agent John Alford and Chief of Police Randy Ellison. A video from a store called Terwilligers showed two individuals enter the store at about 12:45 a.m. and then walk toward the location of the church. The other video from the Starbright carwash showed one individual pulling on an air conditioning unit in the church, going back inside the church, a flash followed by two individuals running out, and later on, the building beginning to burn. Chief Ellison contacted the Georgia Bureau of Investigation to launch an arson investigation based on the contents of the videos.

Police issued a $10,000 reward for information related to the fire, and Officer Nicholas Robertson testified that his office received a call on October 8, 2011, from an individual named Antonio Scott, who claimed to have relevant information.

Robertson met with Scott at 2:00 a.m., and Scott told him that he had overheard Williams and a man named Steven Davis bragging about "hitting the church and bringing it down by burning." Scott identified Williams as one of the men in still pictures officers took from the Starbright Car Wash video. During Scott's initial testimony at trial, he said that Williams was not involved in the conversation he reported to Robertson, but the State recalled Scott the next day, and he testified that he had lied about Williams not being involved because he was scared.

On October 11, 2011, an officer spotted Davis while patrolling, and Davis ran when he realized the officer recognized him. The officer radioed for backup, and Officer Josh Thompson arrived to assist; while Thompson was in the woods assisting the other officer search for Davis, he discovered Williams hiding in a ditch.

Ramon Gardner, a Burger King employee with whom Williams had been a co-worker, testified that on the evening of the fire around 9:30 or 10:30 p.m., he saw Williams lying on the ground outside of the Burger King restaurant when Gardner came out on a break from his shift. Gardner identified Williams as one of the men in still pictures officers took from the Starbright Car Wash video. Anita Adams, who was in a relationship with Williams at the time, testified that on the night of the fire

4

at around 2:30 or 3:30 a.m., she picked up Williams at a club in town, and his clothing smelled like smoke, which was not how he smelled earlier in the evening.

On October 14, 2011, Officer Alford secured a warrant for Williams's arrest and then conducted an interview of Williams. Williams denied starting the fire, but he admitted that he was at the Burger King and the area surrounding the church at that time with an individual named Steven Davis.

Steven Davis, Williams's alleged accomplice who previously had pleaded guilty to the charges related to the fire, also testified that Williams assisted in the crimes. Davis testified that on the night of the fire, he and Williams were hanging out and decided to rob the Burger King; while they were waiting out back in the grass, a police car drove by, so they left and walked to a convenience store, intending to rob the store. Because there were too many people around the store, they left to try and find someplace to "crash" for the night. They walked through the Starbright Carwash, and over to the church, where Davis tried to get the air conditioner units out before going inside, where they intended to go to sleep. Davis testified that while they were inside, Williams first went to the kitchen and at some point lit candles, and then they started looking around the church for things to steal, and when they came back to

5

where they had set down their candles, the fire had started. Although they attempted to extinguish it, they did not alert the fire department or call 911.

Williams took the stand in his own defense. Williams admitted being with Davis the evening of the fire, that he intended to rob the Burger King but changed his mind, and that Davis was going to the church; however, Williams denied that he went into the church or that he set a fire there.

After asking to view the video footage from the convenience store twice during deliberations, the jury found Williams guilty of arson, burglary, and criminal damage to property in the first degree. Williams moved for a new trial, which motion the trial court denied after a hearing. This appeal followed.

*Sufficiency*

1. Williams challenges the sufficiency of the evidence because the testimony of his alleged accomplice, Davis, was not corroborated by independent evidence to support the jury's guilty verdict.

> In Georgia, a defendant may not be convicted on the uncorroborated testimony of an accomplice.[6] The corroboration must be

---

[6] OCGA § 24-4-8 (2012). Georgia adopted a new Evidence Code effective January 1, 2013. See Ga. L. 2011, pp. 99, 214, § 101. Because Williams's trial was held in 2012, the former evidence code applies.

independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support the verdict.[7]

(a) *Arson*. Williams contends that Davis's testimony does not show that Williams started the fire or that either of the men did so intentionally.

Under the subsection alleged in the indictment,

[a] person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage . . . [a]ny . . . building . . . or other structure whether it is occupied, unoccupied, or vacant and when such is insured against loss or damage by fire or explosive and such loss or damage is accomplished without the consent of both the insurer and the insured[.][8]

---

[7] (Punctuation omitted.) *Russell v. State*, 322 Ga. App. 553, 554 (1) (745 SE2d 774) (2013), quoting *Brown v. State*, 199 Ga. App. 18, 21 (4) (404 SE2d 154) (1991).

[8] OCGA § 16-7-60 (a) (3).

Williams is correct that Davis testified only that both men lit candles and when they returned to the area, the fire had started. Nevertheless, coupled with the testimony from investigators and the gas provider that the copper tubing to the gas tank appeared to have been cut and would have emitted a noxious odor and sound at the time it was severed, there was sufficient evidence for the jury to conclude that Williams and Davis intentionally set the fire despite the fact that there was no testimony from Davis about the duo cutting the gas line.[9] Although there was testimony from Adams, Williams, and Davis that also supported a finding that Davis was the only individual involved in setting the fire, determinations of credibility were for the jury to make.[10]

(b) *Burglary*. Williams contends that Davis's testimony only established that they entered the church to sleep, and that Davis, not Williams, was the only one who attempted to take anything. Williams admitted on the stand, however, that earlier the same evening he and Davis intended to rob the Burger King restaurant and the

---

[9] See *Graf v. State*, 327 Ga. App. 598, 601 (1) (760 SE2d 613) (2014) ("arson 'can seldom be established by positive testimony,' and 'the force to be given' to circumstances corroborating a defendant's guilt is a question for the jury rather than this Court").

[10] See id.; *Allen v. State*, 222 Ga. App. 492, 493 (474 SE2d 698) (1996).

convenience store. Taking this testimony together with Davis's testimony that the two were plundering the church, the evidence was sufficient to support the jury's verdict finding Williams guilty of burglary of the church.[11]

(c) *Criminal damage to property*. Williams contends that the State failed to show an essential element of the crime — that he knowingly interfered with the property *so as to endanger human life*. He contends it was not reasonably foreseeable that human life was in danger because of the time of day of the fire and lack of individuals in the immediate vicinity of the church.

The Georgia Supreme Court has construed

> the phrase 'in a manner so as to endanger human life' to mean reckless endangerment rather than actual endangerment. . . . [T]he 'actual risk of danger' must exist[,] and the defendant must at least act recklessly. This interpretation is consistent with the purpose of the statute in seeking to protect human life and recognizes the heightened punishment for criminal damage to property when human safety is threatened.[12]

Here, Williams is correct that the State did not present evidence that anyone was actually inside the church at the time the fire occurred. In a similar case,

---

[11] See, e.g., *Russell v. State*, 322 Ga. App. at 554 (1).

[12] *Cathern v. State*, 272 Ga. 378, 381 (529 SE2d 617) (2000).

however, this Court found that based on an investigator's testimony that a burned business "was surrounded by homes, other businesses, and a gas station, and that the fire presented a danger to residents, the public, and firefighters," evidence was sufficient to show that it was reasonably foreseeable that human life was endangered.[13] In this case, there was testimony that firefighters were on the scene for approximately eight hours controlling the blaze, and various businesses and residences were near the church. Accordingly, sufficient evidence supports the jury's verdict as to this count.

*Ineffective Assistance of Counsel*

To establish a claim of ineffective assistance of counsel,

> the defendant must [first] show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that

---

[13] Cf. *Pless v. State*, 277 Ga. App. 415, 417 (1) (626 SE2d 613) (2006) (Pless was charged with arson under OCGA § 16-7-60 (a) (5), which contains that same element "under such circumstances that it is reasonably foreseeable that human life might be endangered" at issue here).

10

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[14]

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[15]

2. (a) Williams contends that counsel should have objected to the trial court's questioning of Davis about his truthfulness.

---

[14] *Strickland v. Washington*, 466 U. S. 668, 688 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[15] Id. at 690 (III) (A).

OCGA § 17-8-57 provides that [i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. "Even if defense counsel fails to raise an objection, if the trial court violates this statutory provision, we are required to order a new trial, and there can be no finding of harmless error[.]"[16] Therefore, we determine only whether OCGA § 17-8-57 has been violated even though this enumeration is raised under the auspice of ineffective assistance of counsel.

Specifically, Williams takes issue with this exchange between the trial court and Davis:

> [Trial Court]: [The District Attorney] said he told you to tell the truth. The only question I have for you is, is what you have said here today the truth?
>
> [Davis]: Yes, Sir.

---

[16] (Punctuation omitted.) *Wilson v. State*, 325 Ga. App. 859, 860 (1) (755 SE2d 253) (2014), quoting *Booker v. State*, 322 Ga. App. 257, 259 (1) (744 SE2d 429) (2013).

As this Court explained in *Price v. State*,[17] "the trial court's questions to the witness — consisting merely of asking the witness whether []he was lying or being truthful — clearly intimated the court's opinion regarding the credibility of her testimony and were therefore patently improper."[18] "The trial court's compliance with the statutory language of OCGA § 17-8-57 is mandatory, and a violation of its mandate requires a new trial. In light of the mandatory nature of the statute and the case law interpreting the statute, we must reverse [Williams's] convictions and remand the case to the trial court for a new trial."[19]

(b) Williams also contends that trial counsel was ineffective because he failed to object to the trial court's improper questioning of Scott related to his identification of Williams. Specifically, Williams contends that this line of questioning by the trial court violated OCGA § 17-8-57 and had the effect of commenting to the jury that the court perceived Scott to be testifying truthfully:

[State]: Who did you identify in the pictures?

---

[17] 310 Ga. App. 132, 131-135 (1) (712 SE2d 135) (2011).

[18] Id. at 134-135 (1).

[19] (Punctuation omitted.) *Wilson*, 325 Ga. App. at 861 (1), quoting *Chumley v. State*, 282 Ga. 855, 858 (2) (655 SE2d 813) (2008).

13

[Scott]: Anthony and Steve.

[State]: Okay.

[Scott]: Because somebody told me their names. . . .

[Defense Counsel]: Mr. Scott, I just want to get this correct. When the police came to talk to you three or four times they were saying it was you [in the picture], and so you basically just told them what they wanted to hear to get them off your back?

[Scott]: Yes, sir.

[Defense Counsel]: No further questions.

[State]: Now did you realize the conversation that you were having with the officers was recorded?

[Scott]: Okay.

[State]: Okay. No further questions.

At this point, the trial court interjected questions to Scott.

[Trial Court]: Do you recognize the people in that picture?

[Scott]: I didn't recognize them at first.

14

[Trial Court]: I didn't ask you if you recognized them at first.

[Scott]: Okay, yes, I recognized them —

[Trial Court]: Did you ever recognize the people in that picture?

[Scott]: Yes, Sir.

[Trial Court]: Who were they?

[Scott]: Anthony and Steven.

[Trial Court]: Is that the Anthony sitting there?

[Scott]: That's the person that was on the picture.

[Trial Court]: Is that the person you saw in the picture?

[Scott]: Yeah.

[State]: That's — okay, fine.

[Trial Court]: That's what I wanted to find out. Regardless of when you identified them or how you identified them or whatever, at some point you recognized Anthony who's sitting here in the courtroom and [Davis] as the people in those pictures. Is that correct?

15

[Scott]: Yes, Sir, yes, Sir.

[Trial Court]: All right, that's what I thought you said, but it wasn't very clear.

The purpose of [OCGA § 17-8-57], at least in part, is to prevent the jury from being influenced by any disclosure of the judge's opinion regarding a witness's credibility. The credibility of a witness is a material fact in every case, and any questions of credibility are for the jury to decide. Therefore, anything which tends to uphold, to support, to disparage, or to lower the character and the resulting credibility of the witness is vitally connected with the facts of the case.[20]

The State contends that this exchange was an acceptable examination for the trial court to make in order to develop the truth of the case because Scott's testimony was often confusing in places.[21] Nevertheless, as Williams argues, the trial court's questioning and particularly the statement that "[r]egardless of when you identified them or how you identified them or whatever, at some point you recognized Anthony

---

[20] (Footnotes and punctuation omitted.) *Callaham v. State*, 305 Ga. App. 626, 627 (1) (700 SE2d 624) (2010).

[21] See id. at 628-629 (2) ("[i]t has long been part of Georgia jurisprudence that a trial judge may propound questions to any witness for the purpose of developing fully the truth of the case, and the extent of such an examination is a matter for the trial court's discretion.") (punctuation omitted).

16

who's sitting here in the courtroom and [Davis] as the people in those pictures[,]" had the effect of completely disclaiming to the jury Scott's earlier testimony that he only provided an identification of one of the individuals in the picture as being Williams *after* he was given Williams's name.[22] Accordingly, this exchange by the trial court was also violative of OCGA § 17-8-57, requiring reversal.

4. Although not raised by Williams on appeal,[23] we address the trial court's failure to merge Williams's convictions for first degree arson and first degree criminal damage to property because it may recur on retrial.[24] The failure to merge these counts was error because the allegation of first degree criminal damage to property — "[a] person commits the offense of criminal damage to property in the first degree

_____

[22] See *State v. Anderson*, 287 Ga. 159, 160-161 (1) (695 SE2d 26) (2010) (although the trial court may propound questions in order to clarify testimony about whether venue had been proven, its statements including "I just wanted to make sure" constituted a violation of OCGA § 17-8-57); *Price*, 310 Ga. App. at 131-135 (1).

[23] The trial court found this argument meritless as raised in the motion for new trial.

[24] See *Nazario v. State*, 293 Ga. 480 (746 SE2d 109) (2013) ("A conviction that merges with another conviction is void — a nullity — and a sentence imposed on such a void conviction is illegal and will be vacated if noticed by this Court, even if no merger claim was raised in the trial court and even if the defendant does not enumerate the error on appeal. The merger issue must arise in a proceeding in which void convictions may be challenged, but a direct appeal is such a proceeding. And the merger of the convictions at issue must, of course, be established by the record.").

17

when he [k]nowingly and without authority interferes with any property in a manner so as to endanger human life"[25] "by causing a fire" — is the equivalent of first degree arson pursuant to OCGA § 16-7-60 (a) (5) —

> [a] person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage [a]ny . . . structure under such circumstances that it is reasonably foreseeable that human life might be endangered.[26]

Our Supreme Court has explained that when a jury convicts a defendant for two counts of arson alleging two different methods of conviction for one act of burning a structure, the counts merge.[27] In this case, because the first degree criminal damage to property was the equivalent of charging Williams with one of the five methods for

---

[25] OCGA § 16-7-22 (a).

[26] See *Corson v. State*, 144 Ga. App. 559, 560-561 (1) (c) (241 SE2d 454) (1978) ("In the situation before us now, we have one act, directed not against individuals, since none happened to be present, but against the public interest in the protection of life and property in general. Therefore, only one crime has been committed. The conviction for criminal damage to property must accordingly be set aside as a lesser included offense in first degree arson").

[27] See *Stinski v. State*, 286 Ga. 839, 841 (1) (691 SE2d 854) (2010) (conviction for two counts of first degree arson under separate subsections but for one act must result in merger of the counts).

18

proving first degree arson, the trial court erred by failing to merge the two counts upon conviction.

5. We decline to address the remainder of Williams's enumerations because they are unlikely to recur upon retrial.

*Judgment reversed. Miller, J., concurs. Dillard, J., concurs in judgment only*.