**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 26, 2018**

# In the Court of Appeals of Georgia

A17A1593. CLARY v. THE STATE.                    DO-054 C

DOYLE, Presiding Judge.

Following a jury trial, Chelsea Brooke Clary was convicted of two counts of first-degree arson,[1] concealing the death of another,[2] and three counts of theft by bringing stolen property into the State.[3] Clary appeals the subsequent denial of her motion for new trial, arguing that the evidence was insufficient to support the verdict; trial counsel was ineffective; and the trial court erred by failing to give a curative instruction following improper closing argument by the State. For the reasons that follow, we affirm.

---

[1] OCGA § 16-7-60 (a) (5).

[2] OCGA § 16-10-31.

[3] OCGA § 16-8-9.

On appeal, the

appellant is no longer presumed innocent[,] and all of the evidence is to be viewed in the light most favorable to the jury verdict. This Court does not reconsider evidence or attempt to confirm the accuracy of testimony. Assessing a witness's credibility is the responsibility of the factfinder, not this Court. Instead, we review the case to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict. Upon review of the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

So viewed, the record shows that on September 28, 2014, Clary and her boyfriend, Jonathan Cann, drove from South Carolina to Elbert County, Georgia, in two separate cars. Cann drove a Kia Spectra belonging to Charles Paul Mills, whose deceased body was in the trunk wrapped in carpet. Clary followed behind driving a Dodge Ram truck containing an assault rifle and coins stolen from Charles Wayne Jackson during a burglary in South Carolina five days earlier. Cann's friend, Blair Leroy, was a passenger in the Dodge.

---

[4] (Citations and punctuation omitted; emphasis in original.) *Frey v. State*, 338 Ga. App. 583 (790 SE2d 835) (2016). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

During the drive, the trunk to the Kia popped open, and Leroy observed what appeared to be the underside of carpeting in the trunk. She asked Clary what was inside the trunk, and Clary told her that it was a deer. Cann stopped the Kia and closed the trunk, and the trio proceeded to Elbert County.

Once in Elbert County, Cann pulled off the highway onto a dirt road leading into the woods. Clary followed in the truck, but she ran it into a guardrail, where it became stuck. Leroy observed Cann standing next to the Kia, which was on fire. After unsuccessfully attempting to dislodge the truck from the guardrail, Cann set the truck on fire and began walking away.

Meanwhile, Jason Blanton, a volunteer fireman, and his son, Joseph Blanton, observed the smoke from the nearby road, and he drove into the woods to assist. When the Blantons got out to offer aid, Cann exited the truck, aimed the assault rifle at them, told them their help was not needed, and then fled into the woods with Clary.

Police responded, where they found Mills's charred body in the trunk of the Kia. A subsequent autopsy revealed that he had died before the fire. After several hours, Clary and Cann were located in the woods, attempting to conceal themselves under leaves and branches. When she was apprehended, Clary had in her possession a backpack containing the stolen coins. While in jail, Clary gave her cell mate a hand-

3

drawn map depicting the location of the rifle and asked her to find and dispose of the gun because Clary and Cann had used it to kill someone and did not want police to find it. Authorities ultimately confiscated the map and used it to locate the rifle, which had a serial number belonging to Jackson.

Clary was charged with two counts of first-degree arson (Counts 1 and 7), concealing the death of another (Count 2), and four counts of theft by bringing stolen property into the State (Counts 3, 4, 5, and 6). The jury found her not guilty on Count 4, but guilty on the remaining six counts.[5] Clary filed a motion for new trial, which the trial court denied, and this appeal followed.

1. *Sufficiency of the evidence.*

(a) *Arson (Count 1).* Clary contends that the evidence was insufficient to support her conviction for Count 1, arson. We disagree.

Count 1 charged that Clary

did knowingly damage, by means of fire, a Kia Spectra, a motor vehicle, under such circumstances that it was reasonably foreseeable that human life might be endangered in that said accused did immolate said vehicle by use of accelerant in a wooded area adjacent to a residential

_____

[5] The State jointly tried Clary with Cann.

neighborhood where it was foreseeable that the accused's actions could ignite a forest fire and burn down said residential neighborhood. . . .

OCGA § 16-7-60 (a) (5) provides in relevant part:

A person commits the offense of arson in the first degree when, by means of fire or explosive, . . . she knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage . . . [a]ny vehicle . . . under such circumstances that *it is reasonably foreseeable that human life might be endangered*.[6]

Clary alleges that the State failed to prove that it was reasonably foreseeable that human life might be endangered, arguing that the vehicle was several miles into the woods, "where all witness accounts indicate there was not a residence within miles," and started the fire in the trunk, apparently intending to confine the fire to the trunk containing Mills's dead body. The evidence belies this assertion, however.

When the Kia was set on fire, it was pulled under a tree into a bank covered with leaves and other debris. The surrounding area contained trees, brush, and other items people had dumped. By the time firefighters responded to the scene, the hill, trees, and "everything on either side of it" had burned, in a fire described by an investigator as "complete combustion." Police also found two tires inside the vehicle,

---

[6] (Emphasis supplied.)

5

which the fire investigator classified as accelerants designed to speed up the burning process. According to the fire investigator, the fire posed a substantial risk of creating a forest fire that could have spread for miles if not extinguished. And another officer testified that there was a boat storage area and multiple residences in the area where the Kia was set on fire, showing jurors a map of the area.

Under these circumstances, there was sufficient evidence to support the jury's conclusion that it was reasonably foreseeable that human life might be endangered by setting fire to a car containing additional tires in a heavily wooded area near homes.[7]

---

[7] See *Williams v. State*, 329 Ga. App. 706, 711 (1) (c) (766 SE2d 474) (2014) (reasonably foreseeable that human life was in danger by a fire set in a church, even though there were no individuals in the church at the time, because the fire investigator testified that the church "'"was surrounded by homes, other businesses, and a gas station, and that the fire presented a danger to residents, the public, and firefighters'"); *Pless v. State*, 277 Ga. App. 415, 417 (1) (626 SE2d 613) (2006) (evidence was sufficient to support conviction for first-degree arson because the defendant set fire to strip mall in which people lived, which was surrounded by homes, other businesses, and a gas station); *Vineyard v. State*, 195 Ga. App. 788, 788-789 (2) (395 SE2d 49) (1990) (danger to human life foreseeable in carpet plant fire, even though wall separated employees from fire, because they were in close proximity to fire and resulting toxic smoke); *Bell v. State*, 163 Ga. App. 672, 675-676 (4) (295 SE2d 147) (1982) (danger to human life foreseeable because the defendant set an abandoned warehouse on fire, knowing that people were in the building at the time). See also *Galbraith v. State*, 468 NE2d 575, 578 (Ind. Ct. App. 1984) (affirming conviction for arson under circumstances endangering human life where the defendant set fire to a mobile home in a densely forested area with an occupied

(b) *Concealing the death of another (Count 2).* Clary contends that the evidence was insufficient to support her conviction for concealing the death of another because the evidence showed that Cann was in South Carolina when he shot Mills, wrapped him in carpet, placed him in the trunk of the Kia, and "hatched a plan . . to dispose of the car. . . ." This argument is meritless.

Pursuant to OCGA § 17-2-1 (b) (1), "a person shall be subject to prosecution in [Georgia] for a crime which [s]he commits, while either within or outside [Georgia], by [her] own conduct or that of another for which [s]he is legally accountable, if . . . [t]he crime is committed either wholly or partly within [Georgia]."

Here, notwithstanding that he was killed and placed in the trunk in South Carolina, the undisputed evidence shows that the Kia was set on fire in Georgia, with the intent to conceal Mills's death. Under these circumstances, the evidence was sufficient to support Clary's conviction for concealing the death of another.[8]

---

mobile home located 200 feet away).

[8] See OCGA § 17-2-1 (b); *Hunsberger v. State*, 299 Ga. App. 593, 595 (2) (683 SE2d 150) (2009). We note that neither Clary nor Cann were charged in this case with murder or battery, crimes which occurred in South Carolina.

2. *Ineffective assistance*. Clary argues that trial counsel was ineffective by failing to object to improper statements by the prosecutor during closing argument. This enumeration provides no basis for reversal.

> To establish ineffective assistance of counsel, a defendant must show that [her] counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*.[9] To prove deficient performance, one must show that [her] attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other.[10]

And "although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous."[11]

---

[9] 466 U. S. 668, 685, 695 (104 SCt 2052, 80 LE2d 674) (1984).

[10] (Citation and punctuation omitted.) *Graham v. State*, 337 Ga. App. 664, 670 (3) (788 SE2d 555) (2016).

[11] (Citation omitted.) *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015).

In closing, the prosecutor commented on the arguments made by counsel for Cann, stating that:

> we heard during the trial that meth makes you paranoid. I don't know if it affects counsel in the same way *if their client takes meth*, but it certainly seems to because that is the height of paranoia to think that this case is somehow a vast conspiracy among multiple law enforcement agencies, the District Attorney's office, and criminals to frame these two people.[12]

A few moments later, while addressing Cann's trial counsel's argument that the passenger in Clary's truck could not have seen Cann as he stood next to the Kia, the prosecutor said: "[T]hat's the best he can do to say, oh, he wouldn't have been able to see anybody; oh, it wouldn't happen. It's ludicrous. I feel like *I* am taking crazy pills."[13]

Clary argues that the prosecutor's arguments improperly implied that defense counsel was under the influence of methamphetamine. This argument is belied by the record. First, the prosecutor was responding to the arguments of Cann's attorney, not Clary's. More importantly, the prosecutor never implied that either defense attorney

---

[12] (Emphasis supplied.)

[13] (Emphasis supplied.)

was under the influence of methamphetamine; instead, he speculated about the effect that Cann's client taking methamphetamine would have on his attorney, and he stated that he felt like he personally was "taking crazy pills."

The record simply does not support Clary's argument on this issue. Accordingly, her trial counsel was not deficient, and the trial court did not err by denying her motion for new trial on the basis of ineffective assistance of counsel.

3. *Trial court's failure to give a curative instruction*. Clary also contends that the trial court erred by failing to give a curative instruction following the State's improper closing argument, relying on *O'Neal v. State*[14] and OCGA § 17-8-75.[15] We disagree.

In *O'Neal*, the Supreme Court addressed whether OCGA § 17-8-75 requires a trial court to give a curative instruction even absent a request from the defendant

---

[14] 288 Ga. 219 (702 SE2d 288) (2010).

[15] OCGA § 17-8-75 provides: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. *On objection made*, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender." (emphasis supplied).

after the defendant objects to the State placing prejudicial matters before the jury that are not in evidence and the trial court sustains the objection.[16] The Court held that:

> [n]owhere in the statute is there a requirement for defense counsel to specifically request additional remedies after interposing an objection to the improper statements made by a prosecutor. to the contrary, the plain language of OCGA § 17-8-75 refers to the *trial court's* independent duty, after defense counsel's objection, to rebuke the prosecutor, give an appropriate curative instruction, or grant a mistrial in the event that the prosecutor has injected into the case prejudicial statements on matters outside of the evidence.[17]

Here, Clary's trial counsel did not object to the prosecutor's closing argument. Therefore, *O'Neal* is inapplicable.

Furthermore, as we held in Division 2, the record does not support Clary's contention that the prosecutor improperly implied that her trial counsel was under the influence of drugs. Accordingly, this enumeration presents no basis for reversal.

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*

---

[16] See *O'Neal*, 288 Ga. at 290.

[17] (Emphasis in original.) Id. at 291 (1).

11